# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **TONYA HONERLAW** | : | CASE NO: |
| c/o Minnillo & Jenkins Co., LPA | : | |
| 2712 Observatory Avenue | : | JUDGE: |
| Cincinnati, Ohio 45208 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **TENDER HEARTS AT HOME** | : | **COMPLAINT** |
| **SENIOR CARE, INC.** | : | |
| 4243 Hunt Rd., Suite 100 | : | |
| Cincinnati, Ohio 45242 | : | **TRIAL BY JURY REQUESTED** |
| c/o Daniel J. Lynch, Registered Agent | : | |
| 3411 Woodlake Court | : | |
| Loveland, OH 45140 | : | |
| | : | |
| And | : | |
| | : | |
| **TSBCR, Inc.** | : | |
| 9435 Waterstone Blvd., Suite 140 | : | |
| Cincinnati, Ohio 45249 | : | |
| c/o Daniel J. Lynch, Registered Agent | : | |
| 3411 Woodlake Court | : | |
| Loveland, Ohio 45140 | : | |
| | : | |
| And | : | |
| | : | |
| **DANIEL J. LYNCH, Individually** | : | |
| 3411 Woodlake Court | : | |
| Loveland, Ohio 45140 | : | |
| | : | |
| And | : | |
| | : | |
| **TIMOTHY J. LYNCH, Individually** | : | |
| 11553 Enyart Road | : | |
| Loveland, Ohio 45140 | : | |
| | : | |
| Defendants. | : | |

Now comes plaintiff Tonya Honerlaw ("Ms. Honerlaw"), and for her Complaint against defendants Tender Hearts at Home Senior Care, Inc. ("Tender Hearts"), TSBCR, Inc. ("TSBCR"), Daniel J. Lynch, Individually and Timothy J. Lynch, Individually, and states as follows:

## I. PRELIMINARY STATEMENT

1. Plaintiff, a non-exempt employee of defendants, brings this action against defendants because she was unlawfully denied overtime pay in violation of the Fair Labor Standards Act ("FLSA") and was constructively discharged in retaliation for asserting her rights under the FLSA and in violation of Ohio public policy.

2. Defendants routinely required plaintiff to work in excess of forty (40) hours per week without paying her the statutorily mandated overtime pay at the rate of one and one-half times her regular hourly rate in violation of 29 U.S.C. § 207 and applicable provisions of Title 29 of the Code of Federal Regulations.

3. Beginning in approximately 2009 and continuing through June 20, 2018, defendants knowingly, purposefully, and willfully maintained policies and practices, more fully described herein, which resulted in a failure to pay overtime pay to plaintiff.

4. After plaintiff complained to defendants that she was entitled to overtime for all hours worked in excess of forty (40) hours per week, defendants deliberately created an intolerable work situation with the intention of forcing plaintiff to resign.

5. Plaintiff seeks unpaid wages and unpaid overtime pay for the three (3) years preceding the filing of this action, liquidated damages in an equal amount, backpay resulting from plaintiff's constructive discharge, liquidated damages in an equal amount, damages for emotional distress, compensatory and punitive damages, declaratory relief and reasonable attorney's fees and costs.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 215 because it arises under the laws of the United States. Federal jurisdiction is invoked to redress violations of the statutes of the United States, specifically, the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.

7. This court has supplemental jurisdiction over plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because her state law claim derives from the same operative facts and is so related to her federal claims over which the Court has original jurisdiction that it forms a part of the same case or controversy.

8. Venue is proper in the Southern District of Ohio, Western Division, pursuant to 28 U.S.C. § 1391(b) because the actions out of which these claims arise occurred in the Southern District of Ohio, Western Division.

## III. PARTIES

9. Plaintiff Tonya Honerlaw is a citizen and resident of the State of Ohio.

10. Defendant Tender Hearts is a for-profit Ohio corporation having filed its Articles of Incorporation on October 25, 2007.

11. Defendant Tender Hearts is in the business of providing senior home nursing care for approximately 80 clients in Southwest Ohio and Northern Kentucky. Its clients are served by approximately 120 health caregivers who work out of Tender Hearts' office in Blue Ash, Ohio, at 4243 Hunt Road.

12. Defendant TSBCR is a for-profit Ohio corporation having filed its Articles of Incorporation on April 15, 2009.

13. The office of defendant TSBCR is located at 9435 Waterstone Boulevard in

Cincinnati, Ohio. Upon information and belief, payroll and benefits for defendant Tender Hearts are administered by TSBCR.

14. At all relevant times, Tender Hearts and TSBCR employees, including Ms. Honerlaw, regularly made telephone calls and sent emails to and from Ohio and Kentucky, and traveled between Ohio and Kentucky in their work assessing and caring for Tender Hearts' clients.

15. At all relevant times, Tender Hearts and TSBCR have had gross operating revenues in excess of $500,000.

16. Defendants Daniel Lynch and Timothy Lynch are the owners and directors of Tender Hearts and TSBCR. They control and are actively involved in managing and directing operations of Tender Hearts and TBSCR.

17. Defendants Daniel Lynch and Timothy Lynch set the terms and conditions of employment of Tender Hearts and TSBCR employees, create schedules for the employees, set rates of pay and exercise complete operational control over Tender Hearts and TSBCR.

18. Defendants Tender Hearts and TSBCR are employers of plaintiff within the meaning of 29 U.S.C. § 203(d).

19. Defendants Daniel Lynch and Timothy Lynch are "person[s] acting directly or indirectly in the interest of an employer in relation to an employee" and therefore, are "employer[s]" within the meaning of 29 U.S.C. § 203(d).

## IV. FACTS

20. Plaintiff Honerlaw is a Licensed Practical Nurse and was employed as a non-exempt hourly employee by defendants from August 2009 until June 20, 2018.

21. Ms. Honerlaw's duties included assessing new clients, preparing care plans, assigning and introducing caregivers to clients, training caregivers and handling new client sales calls.

22. Ms. Honerlaw's regular work hours were 8:00 a.m. to 4:00 p.m., Monday through Friday. She was paid an hourly rate for those hours worked, most recently $24/hour. A copy of her Paycheck Record issued by defendant TSBCR for April 30, 2018 through May 13, 2018 is attached as Exhibit A.

23. Tender Hearts' "About Us" webpage states that it remains "on-call 24 hours a day." A copy of the webpage is attached as Exhibit B.

24. Defendants required Ms. Honerlaw to work "phone duty" in the evenings and on weekends, alternating weeks as follows: Monday and Wednesday evenings one week, then Monday, Wednesday, Friday evenings and Saturday and Sunday the next week. She was paid $25 for each Monday, Wednesday and Friday evening she was required to work. She was paid $200 for each weekend she was required to work. See Exhibit A.

25. Phone duty generally consisted of Ms. Honerlaw taking calls from clients and Timothy Lynch at home, performing related tasks and resolving various work related issues. This routinely required making and receiving phone calls, sending and receiving emails, and sending "jots" and updating care plans using the eRSP home care software program. She also handled new client sales calls forwarded by Timothy Lynch, which required her to interview and assess new clients.

26. During Ms. Honerlaw's employment with defendants, Timothy Lynch stated in various meetings with employees that when they are on phone duty, they are required to answer the phone immediately, are not permitted to work another job, and that calls had to be taken in

private, in a quiet location. He further stated that employees on phone duty were to have their computers with them and on at all times so that they could perform their work using the eRSP program.

27. Timothy Lynch monitored defendants' employees and enforced defendants' policy on phone duty. For example, in 2017, while Ms. Honerlaw was having lunch with a co-worker at Miami Valley Casino while on phone duty, Timothy Lynch called her and instructed her to go home to take calls. On another occasion while on phone duty, Ms. Honerlaw had to leave Top Golf at the insistence of Timothy Lynch to take a sales call. He also frequently checked up on Ms. Honerlaw while she was on phone duty, and called and texted her if a call was not immediately answered or missed.

28. While on phone duty, the volume of customer calls, caregiver issues and new client calls kept Ms. Honerlaw working throughout the phone duty time, particularly on weekends. As a result of defendants' monitoring and demands, she was not free to leave her home or go out with family and friends while on phone duty. Ms. Honerlaw's time was severely restricted by defendants in that all hours spent on phone duty were hours worked, such that she was unable to use her time effectively for personal pursuits.

29. Alternatively, Ms. Honerlaw estimates that she worked at least four (4) hours each weekday evening and eight (8) hours on each weekend day she was assigned phone duty. Examples include, but are not limited to:

    a. For the pay period April 30, 2018 through May 13, 2018, she worked eighty (80) hours plus five (5) weekday evenings and one (1) weekend, Saturday and Sunday, on phone duty. She was paid an hourly rate of $24 for 80 hours, and $325 for phone duty. She was not paid an overtime rate for the phone duty hours. See Exhibit A.

b. For the pay period October 16, 2017 through October 29, 2017, she worked eighty-four (84) hours plus two (2) weekday evenings and one (1) weekend, Saturday and Sunday, on phone duty. She was paid at her then-hourly rate of $23 for eighty-four (84) hours and $250 for phone duty. She was not paid at an overtime rate for the four (4) hours over eighty (80) hours or for the phone duty hours. A copy of the Paycheck Record for October 16, 2017 through October 29, 2017 is attached as Exhibit C.

c. For the pay period July 11, 2016 through July 24, 2016, she worked eighty-one (81) hours plus two (2) weekday evenings on phone duty. She was paid at her then-hourly rate of $20 for eighty-one (81) hours, and $50 for phone duty. She was not paid at an overtime rate for the one (1) hour over eighty (80) hours, or for the phone duty hours. A copy of the Paycheck Record for July 11, 2016 through July 24, 2016 is attached as Exhibit D.

30. For at least the three (3) years prior to the commencement of this action, Ms. Honerlaw routinely worked in excess of forty (40) hours per week and was not paid overtime.

31. In or about April 2018, Ms. Honerlaw complained to defendant Daniel Lynch that she was not being paid properly for all of the hours she was required to work. On prior occasions when she had raised the issue with Timothy Lynch, he told her to "drop it."

32. On or about June 14, 2018, Ms. Honerlaw again complained to Timothy Lynch that she was not being properly compensated for the required phone duty and told him that she had contacted an attorney. Mr. Lynch became angry, stated that she was "on thin ice" and demanded that she forward all of her phone calls to him.

33. On or about June 19, 2018, Timothy Lynch and Daniel Lynch issued a memo to employees entitled "Code of Conduct Statement," a copy of which is attached as Exhibit E. That

day, Timothy Lynch entered Ms. Honerlaw's office and took away her phone and computer. He later returned to her office and gave her the memo, stating "read this," and that he would "be back" to her with her "new duties." When she asked him if he was being hostile toward her because he found out that she had consulted an attorney, he stated that he didn't want to argue with her.

34. On or about June 20, 2018, Timothy Lynch issued a memo to Ms. Honerlaw, claiming that she had been insubordinate and argumentative, and essentially relieving her of all job duties. When Timothy Lynch told her to sign it, Ms. Honerlaw stated that her attorney would need to review it before she signed. A copy of the memo is attached as Exhibit F.

35. Contrary to the statement made in the memo, Ms. Honerlaw had never received any discipline while she was employed by defendants.

36. On or about June 21, 2018, Ms. Honerlaw sent an email to Daniel Lynch and Timothy Lynch, recounting recent events and stating that she was involuntarily resigning; she agreed to continue to work through July 4, 2018 if Timothy Lynch would stop his hostile and threatening behavior. A copy of the email is attached as Exhibit G.

37. On or about June 25, 2019, Daniel Lynch and Timothy Lynch sent Ms. Honerlaw an email dated June 22, 2018, effectively terminating her employment as of June 20, 2018. A copy of the email is attached as Exhibit H.

## V. STATEMENT OF CLAIMS

### Count One
### Denial of Overtime Pay under the FLSA
### 29 U.S.C. § 207(a)(1)

38. Plaintiff incorporates by reference all of the above paragraphs as if fully rewritten herein.

39. Defendants' denial of overtime pay for hours worked in excess of forty (40) hours

per workweek violated the FLSA, including but not limited to the overtime provisions of 29 U.S.C. § 207(a)(1).

40. Plaintiff is entitled to recover from defendants overtime pay for all hours worked in excess of forty (40) hours per workweek during the period beginning two (2) years prior to the commencement of this action, together with liquidated damages in an amount equal thereto, and attorney's fees pursuant to 29 U.S.C. § 216(b).

**Count Two**
**Willful violation of FLSA, 29 U.S.C. § 255(a)**

41. Plaintiff incorporates by reference all of the above paragraphs as if fully rewritten herein.

42. Defendants' conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) such that plaintiff is entitled to recover from defendants an appropriate amount for all hours worked, and overtime pay for all hours worked in excess of forty (40) hours per workweek, during the period beginning three (3) years prior to the commencement of this action, together with liquidated damages in an amount equal thereto and attorney's fees pursuant to 29 U.S.C. § 216(b).

**Count Three**
**Retaliation, under the FLSA, 29 U.S.C. § 215(a)(3)**

43. Plaintiff incorporates by reference all of the above paragraphs as if fully rewritten herein.

44. Defendants retaliated against plaintiff after she asserted her right to overtime under the FLSA. By their conduct, defendants deliberately created intolerable working conditions with the intention of forcing Ms. Honerlaw to resign.

45. As a direct and proximate result of Ms. Honerlaw's constructive discharge, she has suffered damages, including but not limited to lost wages, embarrassment, humiliation and emotional distress.

46. Plaintiff is entitled to payment of wages lost as a result of her discharge, liquidated damages thereon, and appropriate equitable relief pursuant to 29 U.S.C. §§ 215(a)(3) and 216(b), including without limitation damages for emotional distress in accordance with applicable law.

## Count Four
### Wrongful Discharge in Violation of Ohio Public Policy

47. Plaintiff incorporates by reference all of the above paragraphs as if fully rewritten herein.

48. A clear public policy in favor of consulting an attorney about possible claims that would affect an employer's business interests exists, and is manifest in the Ohio Constitution, the Code of Professional Responsibility as adopted by the Ohio Supreme Court, and common law.

49. Discharging employees under circumstances like those involved in Ms. Honerlaw's discharge here jeopardizes that public policy.

50. Ms. Honerlaw's discharge was motivated by conduct related to the public policy.

51. Defendants lacked an overriding legitimate business justification for terminating Ms. Honerlaw.

52. As a direct and proximate result of defendants' unlawful and retaliatory conduct, Ms. Honerlaw has suffered injury and damage for which she is entitled to judgment and relief.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands judgment, jointly and severally, against Tender Hearts at Home Senior Care, Inc., TSBCR, Inc., Daniel J. Lynch and Timothy J. Lynch, individually, as follows:

1. Judgment against defendants for violating the Fair Labor Standards Act;

2. An Order declaring that the defendants' violations of the Fair Labor Standards Act were willful;

3. Judgment awarding plaintiff overtime pay and liquidated damages consistent with the provisions of the Fair Labor Standards Act;

4. Judgment awarding plaintiff back wages, liquidated damages and damages for emotional distress consistent with the provisions of the Fair Labor Standards Act;

5. Judgment against defendants for violating Ohio public policy;

6. Judgment awarding plaintiff back wages, compensatory and punitive damages based on defendants' violation of Ohio public policy;

7. Judgment awarding plaintiff her reasonable attorney's fees and costs in this matter; and

8. Judgment awarding plaintiff such other relief in law and equity to which she is entitled under the premises.

Respectfully submitted,

**MINNILLO & JENKINS Co., LPA**

/s Christian A. Jenkins
Christian A. Jenkins (0070674)
Robb S. Stokar (0091330)
2712 Observatory Avenue
Cincinnati, Ohio 45208
Tel: (513) 723-1600
Fax: (513) 723-1620
cjenkins@minnillojenkins.com
rstokar@minnillojenkins.com
*Counsel for Plaintiff*

**JURY DEMAND**

Plaintiff demands a trial by jury as to all issues so triable in this matter.

                                                                  <u>/s Christian A. Jenkins</u>
                                                                   Christian A. Jenkins (0070674)